**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TRACFONE WIRELESS, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-15-2246 |
| | § | |
| REFILL PHONES, LLC, *et al.* | § | |
| *Defendants*. | § | |
| | § | |

**COMPLAINT FOR DAMAGES AND
<u>INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL</u>**

Plaintiff TracFone Wireless, Inc. ("TracFone"), a Delaware corporation, sues Defendants Khanh Nguyen ("Nguyen") and Refill Phones, LLC (collectively, the "Defendants") and states as follows, pursuant to Fed. R. Civ. P. 3 and 8:

1.      This is an action for damages and for injunctive relief arising out of Defendants' unlawful activities that defraud TracFone and its customers and willfully infringe TracFone's incontestable federal trademarks and other rights related to TracFone's prepaid wireless service that is marketed and sold under several different trademarked brands, including TracFone, NET10, and Straight Talk.  TracFone's prepaid wireless services are marketed and sold under TracFone's trademarked  ⊚  ("spiracle logo").

2.      Defendants are engaged in unlawful activities involving the unauthorized and unlawful acquisition, purchase, and sale of TracFone prepaid airtime, the fraudulent use of the airtime on TracFone's service, and other violations of federal and state law (the "Airtime Fraud Scheme" or "Scheme").

<u>P</u>ARTIES

3.      TracFone is a Delaware corporation that maintains its principal place of business in Miami, Florida.  For the purposes of 28 U.S.C. § 1332, TracFone is a citizen of the States of Florida and Delaware.

1

4.      Defendant Khanh Nguyen is an individual and a citizen of the State of Texas who has engaged in illicit conduct and business transactions in the Southern District of Texas as alleged herein.

5.      Defendant Refill Phones, LLC is a Delaware limited liability company that maintains its principle place of business in Houston, Texas and has engaged in illicit conduct and business transactions in the Southern District of Texas as alleged herein.

6.      All conditions precedent to filing this action have been performed, waived, or excused.

7.      TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

<u>JURISDICTION</u>

8.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338 because TracFone's claims for violations of the Lanham Act, Title 15 of the United States Code, and Computer Fraud and Abuse Act under 18 U.S.C. § 1030 arise under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because TracFone and Defendants are citizens of different states, and the amount in controversy is greater than $75,000.

9.      Plaintiff TracFone Wireless, Inc. is a corporation that is incorporated in Delaware and that maintains its principal place of business in Florida.  Accordingly, for the purposes of 28 U.S.C. § 1332, TracFone is considered a citizen of Delaware and Florida.

10.      Defendant Nguyen is a citizen and resident of Texas, and operates his fraudulent and unlawful business enterprise, Defendant Refill Phones, LLC, from Texas.

11.    Defendant Refill Phones, LLC is a single-member limited liability company.  The single-member owner of Refill Phones, LLC is Defendant Khanh Nguyen, a citizen of Texas.

12.    Defendants' actions have caused substantial damage to TracFone within this District.

13.    Defendant Nguyen is subject to the personal jurisdiction of this Court because he is a citizen and resident of Texas.  Defendant Refill Phones, LLC is subject to the personal jurisdiction of this Court because its single-member owner is Khanh Nguyen, a citizen and resident of Texas, and it maintains its principal place of business in Houston, Texas.

VENUE

14.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b), and 28 U.S.C. § 1400, because a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendants' misconduct occurred in this District, and Defendants are subject to the personal jurisdiction of this Court.

BACKGROUND

15.    This is an action for damages and injunctive relief arising out of Defendants' unlawful business enterprise that defrauds TracFone and consumers and willfully infringes on TracFone's incontestable trademarks and other rights related to TracFone's wireless service marketed under several different trademarked  brands, including TracFone, NET10, and Straight Talk and TracFone's trademarked spiracle logo ("TracFone Prepaid Wireless Service").

16.    Defendants perpetrate the Airtime Fraud Scheme by fraudulently acquiring prepaid airtime under one of TracFone's trademarked  brands (the "Airtime") and reselling it at deeply discounted prices for use on TracFone's Prepaid Wireless Service Network.  Defendants use stolen credit and debit card account information to transact in online purchases of TracFone branded Airtime, from TracFone and its authorized retailers, and receives Airtime Service

3

personal identification numbers ("PIN[s]") that are then sold and loaded onto innocent customer account phone numbers.

17.     Specifically, Airtime is associated with a unique PIN.  In order to authorize Airtime for use on TracFone's network, i.e., to activate a given phone number for a certain amount of service minutes, the customer must provide the unique PIN associated with the Airtime he or she purchased.  Once the PIN is entered into TracFone's proprietary computer system, the customer who purchased the Airtime corresponding to that PIN may designate the phone number for which he or she desires to add the service minutes.

18.     Defendants use compromised credit or debit card account information to purchase mass quantities of the Airtime, and resell the unlawfully acquired Airtime through their website.

19.     Defendants advertise the infringing and unlawful products on classified postings using various eBay seller listings as well as a Facebook page in order to reach and entice unsuspecting customers.

20.     Additionally, Defendants falsely advertise to the public that they are authorized to sell the Airtime, despite the fact that they obtain the Airtime through illegal means.

21.     The items that Defendants offer for sale, which Defendants obtain through illegal means, is meant to appear to the public as authentic TracFone Airtime to be properly activated for use on TracFone's Prepaid Wireless Service Network.

22.     Defendants conceal the origin of the Airtime to the detriment of the customer who is led to believe that TracFone authorized the sale of the Airtime at some point with an associated warranty.

23.     Defendants fraudulently obtain TracFone Airtime for resale to otherwise legitimate TracFone customers.  Once the owner of the compromised credit or debit card account (another victim of Defendants' Scheme) discovers the fraudulent transactions, he or she typically reports it to his or her bank or card issuer.   Then the bank or issuer typically initiates a

4

chargeback, which causes TracFone to lose the revenue from the rendered Airtime service, and leads to the deactivation of the Airtime corresponding to the now-uncovered fraudulent transaction.

24.     Defendants advertise and perform the fraudulent transactions from their websites with the following claim:

> *"We offer 100% satisfaction guarantee.  If you have any issues, please contact us at admin@refillphones.com and we will correct any issues you may have."*

*See* **Exhibit A.**  Defendants use this language to instill confidence in their product and to address their customers, whose service was deactivated by TracFone due to a bank or issuer initiated chargeback.

25.     When customers approach Defendants because their Airtime was deactivated after Defendants' fraud was uncovered, Defendant Nguyen uses his personal credit or debit card to purchase Airtime, which he then provides to the customer.  This ensures that the Airtime will not be deactivated by TracFone because it was not purchased using stolen payment information.

26.     However, Defendants' customers do not know that the Airtime purchased from Defendants, which Defendants portrayed as legitimate, was actually procured by fraud.

27.     Thus, TracFone's consumers can be confused and angry when their services are deactivated because of the fraud committed by Defendants, which damages TracFone's reputation.

28.     Defendants' illicit conduct is causing TracFone to suffer substantial pecuniary losses and has caused immediate and irreparable injury to TracFone.

### TRACFONE'S BUSINESS MODEL

29.     TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under several different trademarked  brands and under its trademarked spiracle logo.  TracFone's customers prepay for TracFone's Prepaid Wireless

Service by purchasing TracFone prepaid Airtime and specially manufactured wireless phones and/or specially manufactured SIM cards.

30.     Customers load Airtime onto their TracFone prepaid phones using codes generated from PIN numbers associated with the purchased TracFone prepaid airtime.  TracFone prepaid phones and Airtime are sold through authorized online channels and also through major national retailers such as Walmart.

**TracFone's Federally Protected Rights**

31.     TracFone has used, and continues to use, trademarks in commerce including the marks TracFone, NET10, Straight Talk, and the spiracle logo (the "Marks")  The relevant registered trademarks owned and used by TracFone are attached as **Exhibit B**.

32.     Only TracFone and its authorized affiliates are allowed to use TracFone's Marks. Defendants are not affiliated with TracFone and cannot use TracFone's trademarks.  TracFone has never authorized Defendants to use TracFone's Marks in any way or for any purpose.

**Defendants' Misconduct**

33.     Defendants are fraudulently advertising and arranging for the sale of TracFone prepaid Airtime on various websites, including refillphones.com and refillphones.goodsie.com, and advertise the Airtime for sale through eBay and Facebook.  Defendants processes payment transactions through PayPal.  However, Defendants do not accept payments through PayPal for the sale of fraudulently-obtained Airtime listed on eBay.  On such postings, Nguyen states "[s]orry no PayPal.  Prepaid phones and phone cards are on PayPal's prohibited list." *See* **Exhibit A**.

34.     Defendants solicit the sales of Airtime through their websites, which include Facebook and eBay listings that lead directly to their websites.  TracFone customers, who are

unaware that the Airtime advertised for sale on Defendants' websites was obtained by fraud, purchase that Airtime from Defendants.

35.     Defendants then use stolen credit or debit card account information to complete purchases of Airtime through TracFone's website, a website of one of TracFone's authorized retailers, or through a physical retail store location.

36.     Defendants use the PIN from the fraudulently obtained Airtime purchase, and apply the corresponding service to the innocent customer's phone.

37.     Alternatively, Defendants fraudulently purchase mass quantities of TracFone Airtime, and activate the pre-purchased Airtime service as necessary when an innocent customer purchases same through their websites.

38.     TracFone has been damaged by the Airtime Fraud Scheme and by Defendants' actions in furtherance thereof.

## SUBSTANTIAL HARM CAUSED
## BY DEFENDANTS' MISCONDUCT

39.     Defendants' Airtime Fraud Scheme substantially harms TracFone and consumers who purchase the fraudulently obtained, discounted prepaid Airtime because the consumers are misled as to the source and origin on their TracFone Airtime, and as to the legitimacy and amount of Airtime they are to receive.

40.     TracFone has received many customer complaints regarding Defendants' Airtime Fraud Scheme.  TracFone has had customers voice their frustration and anger after contacting Customer Service because of issues with their service and then learning the reason for their issues were because the Airtime they had purchased from Defendants was, in fact, illegally obtained TracFone Airtime.

41.    Because Defendants sell fraudulently obtained TracFone Airtime, buyers often blame TracFone when their service is deactivated and they learn that they must purchase additional Airtime.  As a result, TracFone's reputation is further harmed by Defendants' illicit conduct.

42.    Similarly, Defendants' improper and unauthorized resale of TracFone prepaid Airtime—using TracFone Marks—for use with TracFone's Prepaid Wireless Service has resulted in calls and emails by confused and angry consumers to TracFone's customer relations department, for which TracFone incurs substantial costs.

43.    Defendants' illicit conduct has also resulted in the dilution of TracFone's trademarks, caused substantial harm to TracFone's business reputation and goodwill, and created a greater likelihood of confusion, mistake, and deception as to the source of origin for TracFone products unlawfully obtained, advertised, and sold by Defendants and as to the presumed existence of a business relationship between TracFone and Defendants.

44.    Defendants' conduct has also caused TracFone to suffer a direct financial loss given that TracFone must ultimately pay its underlying carriers for the Airtime misappropriated by the Defendants, despite not receiving any revenue from the Defendants' customers who purchased the Airtime.  The chargebacks filed by the credit or debit card issuer lead to a revenue loss for TracFone as it must pay the credit or debit card issuer for the Defendants' fraudulent use of the credit or debit card.  Moreover, in the event an innocent customer's service is deactivated, TracFone must ultimately provide that customer with Airtime without payment therefore, because he or she, like TracFone, was also a victim of Defendants' fraud.

45.    TracFone has obtained ten declarations and continues receive declarations from Defendants' customers, who stated that they were confused and angry when their Airtime was

deactivated, because they believed that the Airtime purchased from Defendants was legitimate TracFone Airtime.  *See* **Composite Exhibit C**.

<u>**CAUSES OF ACTION**</u>

**COUNT ONE**

<u>**FEDERAL TRADEMARK INFRINGEMENT**</u>

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

46.      Defendants' illicit conduct constitutes use of the Marks without authorization in connection with their sale and offer to sell TracFone prepaid Airtime.

47.      Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source of origin of Defendants' products and services, and the relationship between TracFone and Defendants.

48.      Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime has caused actual confusion, mistake, and deception as to the source of origin of Defendants' products and services, and the presumed existence of a business relationship between TracFone and Defendants.

49.      Defendants' portrayal of the TracFone Airtime as legitimate, when, in fact, it is procured by fraud, causes a likelihood of confusion, mistake, and deception as to the source of origin of Defendants' products and services, and the presumed existence of a business relationship between TracFone and Defendants.

50.      Defendants' unauthorized use of the Marks is likely to continue in the future and to cause substantial and irreparable damage to the business, reputation, and goodwill of TracFone.

51.     Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of TracFone's effort and expense over a long period of time. Defendants' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products, services, and business of Defendants have some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

52.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of TracFone. TracFone is without an adequate remedy at law to redress such acts and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

53.     Defendants' aforesaid acts constitute willful infringement of TracFone's federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT TWO

### FEDERAL UNFAIR COMPETITION AND FALSE ADVERTISING

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

54.     Defendants' illicit conduct constitutes use of TracFone's Marks without authorization in connection with his conspiracy to sell and offer for sale TracFone prepaid Airtime.

55.     Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source of origin of Defendants' products and services and the presumed existence of a business relationship between TracFone and Defendants.

56.     Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime has caused actual confusion as to the source of origin of Defendants' products and services and the presumed existence of a relationship between TracFone and Defendants.

57.     Defendants' unauthorized use of the Marks is likely to continue in the future and to cause substantial and irreparable damage to TracFone's business, reputation, and goodwill.

58.     Defendants' use and sale of the Marks in connection with the prepaid Airtime constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of effort and expense by TracFone over a long period of time.  Defendants' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products, services, and business of Defendants have some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

59.     Defendants' use of the Marks and contention that they are selling legitimate TracFone Airtime as part of the Airtime Fraud Scheme misrepresents the nature, characteristics, and/or qualities of their infringing products and services.  This deceived consumers into believing that they were receiving legitimate TracFone Airtime, when, in fact, they were not.  The deception and misrepresentations have a material effect on purchasing decisions and affect interstate commerce.

60.     Defendants' willful and intentional activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

61.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and have unjustly enriched and will continue to unjustly enrich themselves at the expense of TracFone.

11

TracFone is without an adequate remedy at law to redress such acts and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH A CONTRACTUAL RIGHT IN VIOLATION OF TEXAS COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

62.     TracFone customers who purchase prepaid Airtime enter into a valid, binding contract with TracFone where TracFone agrees to provide a certain quantity of airtime in exchange for a certain fee.  Defendants' actions interfere with this agreement between TracFone and its customers.

63.     Defendants' actions complained of herein were made with full knowledge and awareness of the contractual provisions regarding the use of and tampering with the prepaid Airtime.

64.     Defendants have, without legitimate justification, engaged in knowing, intentional, and improper acts, in violation of the law, which were designed to induce a breach or disruption of the contractual relationships between TracFone and the purchasers of TracFone prepaid Airtime.

65.     TracFone has been proximately damaged and continues to be damaged as a result of Defendants' interference.

66.     Defendants' conduct constitutes interference with contract.

67.     Defendants' conduct was intentional, malicious, and willful, such that an award of punitive damages is appropriate.

## COUNT FOUR

### UNJUST ENRICHMENT IN VIOLATION OF TEXAS COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

68.     By stealing and reselling TracFone prepaid Airtime, Defendants obtained benefits from TracFone that have resulted in significant financial benefits to Defendants.

69.     Further, by fraudulently purchasing Airtime from TracFone and TracFone's authorized retailers with stolen credit and debit card information, which Defendants later resold for profit, Defendants obtained benefits from TracFone.

70.     Defendants' unlawful acquisition of these benefits has resulted in significant financial benefits to Defendants and a significant financial detriment to TracFone.

71.     Defendants' acquired these benefits fraudulently, voluntarily, and with full knowledge that they were taking advantage of TracFone and TracFone's customers.

72.     Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain these benefits without paying TracFone the value of the benefits Defendants acquired.

## COUNT FIVE

### COMMON LAW FRAUD

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

73.     As part of the Airtime Fraud Scheme, Defendants regularly and systematically used stolen credit and debit card information to purchase prepaid Airtime from TracFone.

74.     Defendants advertised the fraudulently obtained prepaid Airtime as if they were authorized by TracFone to resell it.

75. Defendants knew that they were not authorized to purchase, resell, and/or activate TracFone prepaid Airtime in the manner described herein.

76. Defendants intended for TracFone and its customers to rely on their misrepresentations so as to provide Defendants with Airtime and with payment for the resale thereof.

77. TracFone's reliance on Defendants' misrepresentations is reasonable as Defendants' presented the credit and debit card information in same manner that a legitimate consumer would.  It is not until the cardholder, who is the victim of Defendants' fraud, uncovers the fraudulent transaction that TracFone is made aware that Defendants' purchases of Airtime are unlawful and fraudulent.

78. TracFone has been and continues to suffer damages as a result of Defendants' actions.

**COUNT SIX**

**CONVERSION**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

79. TracFone has the right to provide its phones and telecommunications services to the public.  Defendants have no such privilege or right.

80. Defendants knew or should have known that TracFone is the owner of the Marks and that Defendants have no legal right to use the Marks on their infringing products and services.

81. Defendants are wrongfully interfering with TracFone's rights by engaging in the Airtime Fraud Scheme.

82. Defendants' conduct has resulted in substantial harm to TracFone as more particularly set forth above.

## COUNT SEVEN

### UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER
### WITH INTENT TO DEFRAUD IN VIOLATION OF 18 U.S.C. § 1030(A)(4)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

83.     TracFone protects access to its computer network by requiring codes and/or PINs to activate TracFone prepaid Airtime for use on TracFone's Prepaid Wireless Service.

84.     TracFone protects access to its telecommunications network by requiring codes and/or PINs to activate TracFone prepaid Airtime for use on TracFone's Prepaid Wireless Service.

85.     After fraudulently purchasing TracFone prepaid Airtime, Defendants use codes and/or PINs necessary to add the Airtime to the pre-arranged phone numbers of Defendants otherwise innocent customers for use on TracFone's Prepaid Wireless Service.

86.     Defendants are not authorized to use the PINs from the stolen Airtime, which essentially function as the end-users' passwords for purposes of accessing TracFone's telecommunications network.

87.     At all times Defendants knew that the Airtime they were activating on behalf of the innocent customer was procured by fraud.  Nevertheless, Defendants used the PIN from that Airtime to access TracFone's network and add the Airtime to the phone number belonging to that customer.  Defendants were not authorized to access TracFone's computer system or telecommunications network in any way, at any time.

88.     The Airtime, which Defendants unlawfully procure and resell is subject to TracFone's Terms and Conditions.  The Terms and Conditions expressly forbid a person, other than the end-user, from using a PIN to access the network and activate the Airtime for use on TracFone's Prepaid Wireless Service.

15

89.     Defendants breached the Terms and Conditions by using the PIN belonging to another person to access TracFone's protected computer systems and telecommunications network.

90.     Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants accessed TracFone's proprietary computer system and telecommunications network by using PINs corresponding to Airtime purchased by other customers, which Defendants were not authorized to use, to alter information in TracFone's system by adding Airtime service to such customers' accounts.

91.     Defendants knowingly, intentionally, and with the intent to defraud, accessed TracFone's proprietary activation system by providing the improperly obtained and/or retained PINs.  Defendants were not authorized to access the proprietary computer system in any way or at any time.

92.     TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communication.

93.     By means of the above-described conduct, Defendants furthered the Airtime Fraud Scheme, and obtained free airtime—which has significant value, as demonstrated above by Defendants' ability to sell the Airtime to unsuspecting customers for profit.

94.     Defendants' activities substantially affect interstate commerce and communication in that the PINs and prepaid Airtime are trafficked over the internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

95.     Defendants' unauthorized access of TracFone's proprietary computer system and wireless telecommunications network has caused and will continue to cause TracFone to suffer

injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

96.     With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of TracFone prepaid airtime, as well as tracking down fraudulently sold prepaid Airtime.

97.     With respect to damage, by accessing the TracFone computer system and telecommunications network without authorization, and activating the fraudulently obtained Airtime, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.  Defendants' conduct has also resulted in calls by confused consumers to TracFone's customer relations department, which causes TracFone to incur substantial costs associated with such calls and damages TracFone's reputation.

98.     Defendants' activities constitute unauthorized access with intent to defraud in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

99.     Defendants' conduct is intentional, malicious, and willful.

100.    Defendants' conduct furthered the Airtime Fraud Scheme by allowing them to sell the unlawfully obtained TracFone prepaid Airtime through their websites to innocent TracFone customers for profit, while depriving TracFone of the profits from such sales.

101.    Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the

17

factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT EIGHT
### THEFT OF COMPUTER DATA IN VIOLATION OF 18 U.S.C. § 1030(a)(2)(C)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

102.    TracFone protects access to its computer network by requiring codes and/or PINs to activate prepaid Airtime for use on its wireless telecommunications network.

103.    TracFone protects access to its telecommunications network by requiring certain codes and/or PINs to activate prepaid Airtime for use on its wireless telecommunications network.

104.    TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communication.

105.    After unlawfully purchasing prepaid Airtime with stolen debit and credit card information, Defendants improperly resell said Airtime.

106.    After an innocent customer purchases the fraudulent Airtime from Defendants through his website, Defendants use the PIN from the stolen Airtime to activate it for use on TracFone's Prepaid Wireless Service.

107.    Through fraudulent means, Defendants obtain and use the codes and/or PINs necessary to apply the TracFone prepaid Airtime to pre-arranged phone numbers for use on TracFone's Prepaid Wireless Service.

108.    Defendants are not authorized to use the stolen PINs obtained through the Airtime Fraud Scheme, which essentially functions as the end-user's password for purposes of accessing TracFone's telecommunications network.

109.    Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants violated the Terms and Conditions, upon which the use of the Airtime is conditioned.

110.    Defendants used such access to alter information in TracFone's computer system and obtain free Airtime from TracFone (which they was not entitled to alter or obtain). Defendants used the improperly obtained prepaid Airtime to fraudulently access TracFone's telecommunications network and sell Airtime for profit.

111.    In so doing, Defendants obtained information from TracFone's proprietary computer system and telecommunications network.  TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

112.    Defendants'    activities    substantially    affect    interstate    commerce    and communication in that the PINs and prepaid airtime are trafficked over the internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

113.    Defendants' unauthorized access of TracFone's proprietary computer system and wireless telecommunications network has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

114.    With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of TracFone prepaid airtime, as well as tracking down fraudulently sold prepaid airtime.

115.     With respect to damage, by infiltrating the TracFone computer and telecommunications network and collecting and disseminating the illegally obtained TracFone prepaid Airtime, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.  Defendants' conduct has also resulted in calls by confused consumers to TracFone's customer relations department, which causes TracFone to incur substantial costs associated with such calls and damages TracFone's reputation.

116.     Defendants' activities constitute theft of computer data in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C).

117.     Defendants' conduct is intentional, malicious, and willful.

118.     Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT NINE
### UNAUTHORIZED ACCESS TO A PROTECTED
### COMPUTER IN VIOLATION OF 18 U.S.C. § 1030(a)(5)(C)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

119.     TracFone protects access to its computer network by requiring codes and/or PINs to activate prepaid Airtime for use on its wireless telecommunications network.

120.     TracFone protects access to its telecommunications network by requiring certain codes and/or PINs to activate prepaid Airtime for use on its wireless telecommunications network.

121.     After unlawfully purchasing the Airtime with stolen credit and debit card information, Defendants improperly uses through fraudulent means, codes and/or PINs necessary to apply TracFone prepaid Airtime to pre-arranged phone numbers for use on TracFone's Prepaid Wireless Service.

122.     Defendants knowingly, intentionally, and with the intent to defraud, accessed TracFone's proprietary activation system by providing the improperly obtained and/or retained PINs.  Defendants were not authorized to access the proprietary computer system in any way or at any time.

123.     Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants violated the Terms and Conditions, upon which the use of the Airtime is conditioned.

124.     TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

125.     Defendants' activities substantially affect interstate commerce and communication in that the codes and prepaid airtime are trafficked over the internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

126.     Defendants' unauthorized access of TracFone's proprietary computer system and wireless telecommunications network has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

21

127.     With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of TracFone prepaid Airtime, as well as tracking down fraudulently sold Airtime.

128.     With respect to damage, by infiltrating the TracFone computer and telecommunications network and collecting and disseminating the illegally obtained TracFone prepaid airtime, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.  Defendants' conduct has also resulted in calls by confused consumers to TracFone's customer relations department, which cause TracFone to incur substantial costs associated with such calls and damage TracFone's reputation.

129.     Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

130.     Defendants' conduct is intentional, malicious, and willful.

131.     Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

### COUNT TEN

#### UNAUTHORIZED TRAFFICKING IN PASSWORDS OR SIMILAR INFORMATION WITH INTENT TO DEFRAUD IN VIOLATION OF 18 U.S.C. § 1030(a)(6)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

132.    TracFone protects access to its computer network by requiring codes and/or PINs to activate TracFone prepaid Airtime for use on TracFone's Prepaid Wireless Service.

133.    TracFone protects access to its telecommunications network by requiring codes and/or PINs to activate TracFone prepaid Airtime for use on TracFone's Prepaid Wireless Service.

134.    The Airtime, which Defendants unlawfully procure and resell is subject to TracFone's Terms and Conditions.  The Terms and Conditions expressly forbid a person, other than the end-user, from using a PIN to access the network and activate the Airtime for use on TracFone's Prepaid Wireless Service.  The Terms and Conditions also prohibit the resale of Airtime PINs.

135.    TracFone utilizes a proprietary system to authorize Airtime for use on its telecommunications network.  Through that system, a customer must use the PIN corresponding to the purchased Airtime to access TracFone's computer system and authorize the Airtime for use on TracFone's telecommunications network.  As such, the PIN acts as the password necessary to access the computer and network.

136.    Defendants breached the Terms and Conditions and trafficked in passwords or similar information by using the PIN belonging to another person to access TracFone's protected computer systems and telecommunications network.

137.    Defendants also knowingly, intentionally, and with the intent to defraud, trafficked in passwords or similar information by providing the improperly obtained and/or retained PINs to innocent TracFone customers through the internet.  Defendants were not authorized to traffic, sell, or provide PINs in any way or at any time.

138.    TracFone's proprietary computer system and telecommunications network are both "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communication.

139.    By means of the above-described conduct, Defendants furthered their Airtime Fraud Scheme, and obtained free airtime, which has significant value, as demonstrated above by Defendants' ability to sell the Airtime to unsuspecting customers for profit.

140.    Defendants' activities substantially affect interstate commerce and communication in that the PINs, which are akin to passwords necessary to access TracFone's telecommunications network and computer system, are trafficked over the internet and throughout the United States, and TracFone's computer system and telecommunications network are used in and affect interstate commerce and communication.

141.    Defendants' unauthorized, knowing, and fraudulent, PIN trafficking has caused and will continue to cause TracFone to suffer injury, with "damages" and "losses"—as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively—substantially in excess of $5,000 over a one-year period.

142.    With respect to loss, TracFone has spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless telecommunications network, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of TracFone prepaid Airtime, as well as tracking down fraudulently sold prepaid Airtime.

143.    With respect to damage, by trafficking in Airtime PINs, Defendants have substantially impaired the integrity of TracFone's systems in an amount in excess of $5,000. Moreover, Defendants' actions have deprived TracFone of the means to control the quality of its product and service.  Defendants' conduct has also resulted in calls by confused consumers to TracFone's customer relations department, which causes TracFone to incur substantial costs associated with such calls and damages TracFone's reputation.

144.     Defendants' activities constitute knowing, unauthorized trafficking in any password or similar information with intent to defraud, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

145.     Defendants' conduct is intentional, malicious, and willful.

146.     Defendants' conduct furthered the Airtime Fraud Scheme by allowing Defendants to sell the unlawfully obtained TracFone prepaid Airtime through their websites to innocent TracFone customers for profit, while depriving TracFone of the profits from such sales.

147.     Pursuant to 18 U.S.C. § 1030(g), TracFone is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above and because the conduct involves at least one of the factors identified in Section 1030(c)(4)(A)(i), including clause (I): loss to TracFone and its customers during any one year period aggregating at least $5,000 in value.

## COUNT ELEVEN

### BREACH OF CONTRACT
### IN VIOLATION OF TEXAS COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

148.     The use of TracFone Airtime is conditioned upon compliance with the Terms and Conditions.

149.     The Terms and Conditions constitute a legal, valid, and binding contract between TracFone and Defendants.

150.     By engaging in the Airtime Fraud Scheme, Defendants breached multiple provisions of the Terms and Conditions, for both the TracFone, Straight Talk, and NET10 branded Airtime.

151.    As a proximate result of Defendants' breach of the Terms and Conditions, TracFone has suffered damage including, but not limited to, the lost profits from the sale of Airtime stolen by Defendants.

### COUNT TWELVE

#### UNFAIR COMPETITION
#### IN VIOLATION OF TEXAS COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

152.    Defendants' illicit conduct constitutes use of the Marks without authorization in connection with their sale and offer to sell TracFone prepaid Airtime.

153.    TracFone's use of the Marks precedes Defendants' unlawful use.

154.    Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime has caused, and will further cause, a likelihood of confusion, mistake, and deception as to the source of origin of Defendants' products and services, and the relationship between TracFone and Defendants.

155.    Defendants' use of the Marks in connection with the sale of TracFone prepaid Airtime has caused actual confusion, mistake, and deception as to the source of origin of Defendants' products and services, and the presumed existence of a business relationship between TracFone and Defendants.

156.    Defendants' statements to their customers that they are selling legitimate TracFone Airtime causes a likelihood of confusion, mistake, and deception as to the source of origin of Defendants' products and services, and the presumed existence of a business relationship between TracFone and Defendants.

157.    TracFone has obtained the declarations of ten of Defendants' customers, who stated that they were confused and angry when their Airtime service was deactivated, because

they believed that the Airtime purchased from Defendants was legitimate TracFone Airtime.  *See* **Exhibits B** through **K** of TracFone's Motion for Preliminary Injunction, filed contemporaneously herewith.

158.    Defendants' unauthorized use of the Marks is likely to continue in the future and to cause substantial and irreparable damage to the business, reputation, and goodwill of TracFone.

159.    Defendants' use and sale of the Marks in connection with TracFone prepaid Airtime constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of TracFone's effort and expense over a long period of time. Defendants' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products, services, and business of Defendants have some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

160.    Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of TracFone. TracFone is without an adequate remedy at law to redress such acts and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

161.    Defendants' aforesaid acts constitute willful infringement of TracFone's federally registered trademarks in violation of Texas common law.

**COUNT THIRTEEN**

**BREACH OF COMPUTER SECURITY
IN VIOLATION OF TEX. PENAL. CODE §§ 33.01, *ET SEQ.***

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

162.    Defendants accessed TracFone's computer system by using a fraudulently obtained PIN, which they was not authorized to use or obtain, to activate Airtime for use on TracFone's Prepaid Wireless Service.

163.    At all times Defendants knew that they were accessing TracFone's computer network without TracFone's consent.

164.    The activation and use of TracFone Airtime is conditioned upon compliance with TracFone's Terms and Conditions.  Defendants were made aware of the Terms and Conditions during their unlawful purchase of Airtime.

165.    TracFone's Terms and Conditions expressly forbid using a PIN belonging to another to activate Airtime on TracFone's network.

166.    By using the PIN corresponding to Airtime purchased by someone other than themselves, Defendants knowingly and expressly violated TracFone's Terms and Conditions, and accessed TracFone's Wireless Service without TracFone's consent.

167.    TracFone is entitled to bring a private cause of action for a violation of this statute pursuant to Tex. Civ. Prac. & Rem. Code § 143.001.

## COUNT FOURTEEN

### CIVIL THEFT PURSUANT TO THE TEXAS CIVIL THEFT LIABILITY ACT
### IN VIOLATION OF TEX. CIV. PRAC. & REM. CODE §§ 134.001, *ET SEQ.*

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

168.    At all times material hereto, TracFone had, and continues to have, a possessory right to the Airtime at issue in this case.

169.    Using stolen credit and debit card information, Defendants unlawfully appropriated the Airtime from TracFone.

170.    Because Defendants' purchases were fraudulent, the Airtime purchase transactions were eventually unwound as a result of chargebacks initiated by the bank or financial institution that issued the credit or debit card, which was stolen by Defendants.

171.    Thus, TracFone was duped into providing Airtime to Defendants, which Airtime was then passed on to Defendants' customers, and for which TracFone never received payment.

172.    TracFone sustained damage as a result of Defendants' unlawful appropriation.

### COUNT FIFTEEN

### UNFAIR COMPETITION / DECEPTIVE TRADE PRACTICES IN VIOLATION OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT — FLA. STAT. § 501.204

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 45, as though fully set forth herein.

173.    Defendants' conduct in the Airtime Fraud Scheme as described above is willful and constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of §501.204, Fla. Stat.

174.    TracFone has standing to bring a claim under this statute because TracFone is considered a "person" as that term is defined in Fla. Stat. § 501.211(2).

175.    TracFone has suffered damage as a direct and proximate result of Defendants' conduct.  Florida Statutes §§501.211 and 501.2105 provide that TracFone is entitled to recover its actual damages, plus attorneys' fees and court costs.

### PRAYER FOR RELIEF

Wherefore, TracFone respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of TracFone and against Defendants Khanh Nguyen and Refill Phones, LLC as follows:

a.      awarding TracFone its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill, and damage to its reputation, as provided by law, together with pre and post-judgment interest;

b.      awarding to TracFone restitution of all money and property unlawfully and unfairly taken by Defendants through their unfair and unlawful conduct;

c.      awarding TracFone permanent injunctive relief against Defendants and enjoining Defendants from engaging in the unlawful practices described in this Complaint;

d.      awarding TracFone its reasonable attorneys' fees and costs of this action, as permitted by applicable rules and statutes; and,

e.      granting such further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff TracFone hereby demands a trial by jury on all triable issues.

Dated:  August 5, 2015                          By:  _Aaron S. Weiss_____

Aaron S. Weiss (S.D. Tex. Bar # 2619295)
Attorney In Charge
Email:  aweiss@cfjblaw.com
Carlton Fields Jorden Burt, P.A
100 Southeast Second Street, Suite 4200
Miami, Florida  33131
Telephone No.  (305) 530-0050
Facsimile No.  (305) 530-0055

*Attorneys for Plaintiff TracFone Wireless, Inc.*